UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HILLIARD GREENE, BESSIE RUSS, and STEPHANIE NOE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. C07-1563RSM<br><br>ORDER ON MOTION TO STAY PROCEEDINGS |

This matter is now before the Court for consideration of defendants' motion to stay these proceedings pending the outcome of administrative proceedings currently before the Federal Communications Commission (FCC). Dkt. #11. The Court deems oral argument on this motion unnecessary. For the reasons set forth below, the motion shall be granted.

BACKGROUND

Plaintiffs have sued defendant, T-Mobile USA, Inc., on behalf of themselves and a proposed class consisting of T-Mobile wireless service customers who were charged an Early Termination Fee (ETF) after they terminated their contracts due to dissatisfaction with service or coverage. According to plaintiffs, defendant charges an ETF which is greater than the remaining monthly service charges on their

ORDER ON MOTION TO STAY
PROCEEDINGS - 1

contracts. Plaintiffs contend that defendant's ETF is not a proper liquidated damages provision, because it is not a reasonable measure of actual or anticipated loss caused by termination, and is unrelated to the amount of time remaining on the contract. Class Action Complaint, ¶¶ 6, 8. Plaintiffs allege that defendant's ETF constitutes breach of contract as well as an unfair or deceptive act in violation of RCW 19.86.020, the Washington Consumer Protection Act. *Id.* at ¶¶ 16-21, 22-25. Plaintiffs request injunctive relief and monetary damages. Defendants have not yet filed an answer to the complaint, contending that the matter should be stayed, pursuant to the primary jurisdiction doctrine, pending administrative proceedings currently before the FCC.

In support of the motion to stay, defendant has provided the Court with two FCC Public Notices and two petitions filed with the FCC, and requests that the Court take judicial notice of them. *See* Dkt. #12, Ex. A, B, I & J. On May 18, 2005, the FCC issued two public notices seeking comment on petitions filed with the Commission. One notice was issued in response to a petition filed by the Cellular Telecommunications & Internet Association (CTIA). Dkt. #12, Ex. A; *see also* Public Notice, 70 Fed. Reg. 38928 (July 6, 2005). On March 15, 2005, CTIA filed a petition for an expedited ruling, requesting that the FCC declare that ETFs in wireless service contracts are "rates charged" within the meaning of the relevant section of the Federal Communications Act ("FCA"), 47 U.S.C. § 332(c)(3)(A). Dkt. #12, Ex. J. CTIA also requested the FCC to declare that "any application of state law by a court . . . to invalidate, modify, or condition the use or enforcement of [ETFs] based . . . upon an assessment of reasonableness, fairness, or cost-basis of the [ETF], or to prohibit the use of [ETFs] as unlawful liquidated damages or penalties, constitutes prohibited rate regulation preempted by Section 332(c)(3)(A)." Dkt. #12, Ex. A.

The second public notice was issued in response to a petition filed on February 22, 2005, by SunCom Wireless Operating Company, LLC, pursuant to a court order in *Edwards v. SunCom*, a class action lawsuit filed in a South Carolina state court. Dkt. #12, Ex. B; *see also* Public Notice, 70 Fed. Reg. 38926 (July 6, 2005). Similar to the CTIA petition, SunCom's petition requested the FCC to declare that ETFs charged to commercial mobile radio service customers are "rates charged" under section 332(c)(3)(A). *See* Dkt. #12, Ex. I.

ORDER ON MOTION TO STAY
PROCEEDINGS - 2

The Court takes judicial notice of these petitions and the public notices to the extent that they indicate that the FCC has commenced proceedings with respect to whether ETFs are preempted "rates charged" within the meaning of 47 U.S.C. § 332(c)(3)(A).

## DISCUSSION

The doctrine of primary jurisdiction is a prudential doctrine "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nadar v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1978) (internal quotes and citation omitted). The doctrine "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *National Communications Association, Inc. v. AT&T*, 46 F.3d 220, 222–23 (2d Cir. 1995) (citing *Far East Conference v. United States*, 342 U.S. 570, 574 (1952)). However, the doctrine is not "intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). "Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.*

There is no fixed formula for applying the doctrine of primary jurisdiction. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64 (1956). However, the Ninth Circuit Court of Appeals has traditionally considered the presence of four factors when determining whether the doctrine of primary jurisdiction is properly invoked. *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006). These factors are "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).

The first factor, the need to resolve an issue, favors application of the primary jurisdiction doctrine. In their complaint, plaintiffs assert that defendant's ETF is unrelated to the monthly service charges and thus not a proper measure of liquidated damages. Dkt. #1, at ¶ 8. In other words, plaintiffs' theory is that the ETF should be tied to the monthly charges remaining on the unfulfilled contract, which would render it a type of rate charged. The characterization of defendant's ETF is crucial to plaintiffs' state law claims, because the FCA expressly preempts state regulation of "rates charged," but not of "other terms and conditions." 47 U.S.C. § 332(c)(3)(A). According to § 332(c)(3)(A), "no State or local government shall have any authority to regulate . . . the rates charged by any commercial mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." *Id.*

Plaintiffs argue that the FCA's preemptive powers are limited, and do not apply to the state law claims in this case. Plaintiffs are correct in that the FCA does not appear to preempt all state law causes of action. *See, e.g.,* 47 U.S.C. § 332(c)(3)(A) (states may regulate "other terms and conditions of commercial mobile services"); § 414 ("Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies"); *see also In the Matter of Wireless Consumers Alliance, Inc.*, 15 FCCR 17021, 17022 ("monetary damages by state courts based on state consumer protection, tort, or contract claims" are not generally preempted by section 332).

However, it is not clear whether a wireless service provider's ETFs, which are at issue in this case, are within the preemptive scope of "rates charged." Those few federal courts which have considered the matter appear to be split on the issue. *Compare Phillips v. AT&T Wireless*, 2004 U.S. Dist. LEXIS 14544 (S.D. Iowa 2004) (finding that early termination fees are other terms and conditions, not rates charged), *with Chandler v. AT&T Wireless Services, Inc.*, 2004 U.S. Dist. LEXIS 14884 (S.D. Ill. 2004) (finding that early cancellation fee is a rate charged). The FCC is currently engaged in proceedings to determine this very issue. *See* Public Notice, 70 Fed. Reg. 38928 (July 6, 2005); Public Notice, 70 Fed. Reg. 38926 (July 6, 2005).

ORDER ON MOTION TO STAY
PROCEEDINGS - 4

In this case, there is a need to resolve whether ETFs fall within the preemptive scope of "rates charged." Defendants have demonstrated that numerous ETF cases have been filed in a number of different jurisdictions. There is a need for uniformity in the determination regarding ETF's, which will be facilitated by deferring to the expertise of the FCC. Plaintiffs contend that whether or not an ETF is a rate is irrelevant to whether the defendant acted unreasonably in violation of the FCA and Washington consumer protection law. However, if the FCC determines that ETFs are within the scope of "rates charged," then plaintiffs' consumer fraud claims may be preempted. This factor favors the application of primary jurisdiction.

The second and third *General Dynamics* factors also weigh in favor of invoking the primary jurisdiction doctrine. Congress granted the FCC authority to execute and enforce the provisions of the FCA. 47 U.S.C. § 151. The FCC has the authority to interpret provisions of the FCA, and courts defer to the Commission's lawful interpretations of the Act. *See, e.g., National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 986 (2005). This case calls for an interpretation of the FCA, a matter which is in the jurisdiction of the FCC. It is appropriate to defer to the FCC's interpretation. The Court joins others in this circuit in declining to accept plaintiffs' argument regarding a "one-way intervention" problem which may arise from such deference. *See*, *Waldmann, et al., v. Cingular Wireless LLC*, C07-5087-ABC-CW, Dkt. # 34 (C.D.Cal. 2007) (found at Dkt. # 16, Exhibit A).

The fourth factor, agency expertise and uniformity, also weighs in favor of deferring to the FCC under the primary jurisdiction doctrine. The potentially determinative issue that needs to be resolved is the preemptive scope of "rates charged" under the FCA. While this type of statutory interpretation may also lie within the conventional competence of courts, more commonly the courts have referred similar questions of statutory interpretation to administrative agencies under the doctrine of primary jurisdiction. *See, e.g., In re Starnet, Inc.*, 355 F.3d 634 (7th Cir. 2004); *Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031 (10th Cir. 1993).

In addition, the need for uniformity in administration is of particular relevance in this case. As the Ninth Circuit has stated, "[i]t is precisely the purpose of the primary jurisdiction doctrine

ORDER ON MOTION TO STAY
PROCEEDINGS - 5

to avoid the possibility of conflicting rulings by courts and agencies concerning issues within the agency's special competence." *Davel Communications, Inc.*, 460 F.3d at 1090. In this case, not only do the few court decisions available conflict as to whether ETFs are preempted rates, but also the FCC is currently considering this precise issue. Thus, the "real possibility that a decision by [the] court prior to the FCC's response . . . would result in conflicting decisions, either between our court and the FCC or our court and another circuit if the FCC ruling is appealed" weighs heavily in favor of invoking the primary jurisdiction doctrine. *Mical*, 1 F.3d at 1037.

Within the primary jurisdiction doctrine, "referral" is a term of art that means that the Court can either stay the proceeding or dismiss the case without prejudice. *Davel Communications, Inc.*, 460 F.3d at 1087 (citing *Syntek Semiconductor Co. v. Microchip Technology, Inc.*, 307 F.3d 775, 782 n.3 (9th Cir. 2002)). "There is no formal transfer mechanism between the courts and the agency; rather, upon invocation of the . . . doctrine, the parties are responsible for initiating the appropriate proceedings before the agency." *Id.* In this case, since there are currently proceedings before the FCC that will resolve the precise issue of whether claims regarding ETFs are preempted under the FCA, no initiation by the parties is necessary. The Court shall stay the proceedings only until resolution of the proceedings currently before the FCC.[1]

## CONCLUSION

The *General Dynamics* factors all weigh in favor of applying the doctrine of primary jurisdiction in this case. The Court further finds that it is in the interest of judicial economy, and within the Court's inherent power to control its own docket to do so. Accordingly, defendants' motion to stay the proceedings is GRANTED, and this case is STAYED until resolution of the

---

[1] Defendant has provided the Court with a copy of a recent order issued by the District Court of the Central District of California. *Waldmann et al., v. Cingular Wireless LLC,* No. CV-07-5087 (C.D. Cal. Nov. 15, 2007); Dkt. #16, Ex. A. That case, similar to the instant case, involves a class action lawsuit based on state law claims against a mobile service provider's practice of charging ETFs. In *Waldmann*, the court conducted a similar primary jurisdiction analysis to the one presented above and decided to stay the case until resolution of the pending FCC proceedings. The Court finds in this well-reasoned decision support for the decision to stay these proceedings.

ORDER ON MOTION TO STAY
PROCEEDINGS - 6

1  current FCC proceedings on the question of whether ETFs are "rates charged" within the meaning of
2  47 U.S.C. § 332(c)(3)(A).  If no resolution is reached within 180 days of this date, the parties shall
3  file a joint status report advising the Court of the status of the proceedings before the FCC.
4  Plaintiffs shall move to lift the stay promptly upon resolution of the FCC proceedings.

      Dated this 7th day of February, 2008

                                                RICARDO S. MARTINEZ
                                                UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO STAY
PROCEEDINGS - 7